**Scott Benjamin HALL, Appellant,**

v.

**Elizabeth Joanne HALL, Respondent.**

**No. WD 72290.**

Missouri Court of Appeals,
Western District.

March 15, 2011.

Anita I. Rodarte, Kansas City, MO, for appellant.

Christina E. Gondring, Kansas City, MO, for respondent.

Before: MARK D. PFEIFFER, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Scott Hall ("Father") appeals a Judgment and Decree of Dissolution of Marriage entered by the Circuit Court of Clay County, which dissolved his marriage to Elizabeth Hall ("Mother"). Father makes multiple arguments challenging both the trial court's child custody determination, and its award of maintenance to Mother. We reject Father's challenge to the maintenance award. Because the trial court failed to make sufficient findings of fact to justify its custody determination, however, we reverse and remand with respect to the custody issue.

## Factual Background

Mother and Father were married in May 1997. They had two children during their marriage: a son born in 2003, and a daughter born in 2007.

Trial of contested issues· occurred over five days between June and September, 2009. The parents submitted competing parenting plans, in addition to a parenting plan submitted by the Guardian *ad Litem.* The trial court entered its Judgment on November 18, 2009. The trial court adopted its own parenting plan and awarded joint legal and physical custody to Mother and Father, with the Mother's home designated as the children's address for mailing and educational purposes. The trial court also awarded Mother $3,000 per month in modifiable spousal maintenance, to continue "until further order of the Court." Father appeals.[1]

## Analysis

### I.

In his first four Points Relied On, Father argues that the trial court failed to make adequate findings of fact to support its child custody determination, and that reversal and remand are required. We agree.

As a preliminary matter, we emphasize that Father filed a timely motion to alter or amend the judgment as required by Rule 78.07(c), raising each of the deficiencies in the judgment on which he now relies on appeal. The trial court's failure to make required findings is accordingly preserved for appellate review. *See, e.g., Pickering v. Pickering,* 314 S.W.3d 822, 839 (Mo.App. W.D.2010) ("The failure to make the findings required by section 452.375.2 must be raised in a motion to amend the judgment." (citations omitted)).

The trial court's judgment contains the following findings relevant to child custody issues:

---

[1] Mother asks us to dismiss Father's appeal with prejudice for various alleged briefing deficiencies. However "we prefer to dispose of a case on the merits, whenever possible, rather than to dismiss an appeal for deficiencies in the brief." *Harris v. Div. of Emp't Sec.,* 292 S.W.3d 416, 418 (Mo.App. W.D. 2009). Despite the claimed technical deficiencies in Father's opening Brief, we can readily determine his arguments, and therefore address his claims on their merits.

20. The Court has considered the factors as set forth in Sec. [452.]375.2 RSMO as it relates to the best interests of the minor children as outlined herein:

a) Wishes of the children's parents: The Court did not find this factor to be applicable to the evidence presented or to weigh in either party's favor.

b) Frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father: Considering [the younger child] the Court finds this factor favors Mother. Considering [the older child] the Court finds that this factor weighs evenly in favor of Mother and Father.

c) Interaction and interrelationship of the child with parents, siblings, and any other person[s] who may significantly affect the child's best interest: This factor favors Mother.

d) Which parent is more likely to allow frequent, continuing and meaningful contact with the other parent: The Court finds this factor favors Mother.

e) Child's adjustment to the child's home, school and community. The Court did not find this factor to be applicable to the evidence presented or to weigh in either party's favor.

f) Mental and physical health of all individuals. The Court did not find this factor to be applicable to the evidence presented or to weigh in either party's favor.

g) Intention of either parent to relocate the principal residence of the child. The Court did not find this factor to be applicable to the evi-

dence presented or to weigh in either party's favor.

h) Wishes of the child. The Court did not find this factor to be applicable to the evidence presented or to weigh in either party's favor.

21. The Court finds that until May, 2008, Mother by explicit or implicit agreement of the parties was the "stay-home" parent of both children.

22. The Court finds that prior to May 2008[,] there were typical issues with [older child] and disagreements between Mother and Father on parenting issues, not uncommon to many families. One event does not erase all prior behavior.

. . . .

25. The Court rejects all proposed parenting plans submitted by the Mother, Father and the Guardian Ad Litem.

26. The Court finds it is in the best interests of the minor children that the parties should share joint legal and physical custody of the minor children with Mother's address designated as the minor children's residence for all educational and medical purposes. [Older child] should change schools from his current private school to the public school district wherein Mother resides at the end of the current semester or January 1, 2009 [sic; 2010?].

27. The Court finds the Parenting Plan as outlined herein below to be in the minor children's best interests and hereby adopts same. The parties should be ordered to abide by the terms of same.

Father argues that the trial court's findings are deficient in multiple respects: (1) they fail to adequately address the "best interests" factors specified in § 452.375.2 [2];

2. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Sup-

(2) they fail to adequately explain the factors animating the trial court to reject the parenting plans proposed by Mother, Father, and the Guardian *ad Litem*, as required by § 452.375.6; (3) they fail to adequately address the evidence of domestic violence Father presented, as required by §§ 452.375.2(6), 452.375.13, and 452.400; and (4) they fail to address Mother's mental health, as required by § 452.375.2(6). We agree that deficiencies in the trial court's findings require that we reverse the trial court's custody determination, and remand for entry of appropriate findings on these statutorily required issues.[3]

## A.

Section 452.375.2 specifies that, in determining custody in accordance with the best interests of the children, "[t]he court shall consider all relevant factors including" the eight factors the trial court listed in paragraphs 21(a) through (h) of its Judgment, quoted above. In addition, § 452.375.4 states:

[I]t is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

Section 452.375.6 further specifies that,

[i]f the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child.

 Under § 452.375.6, where "the parties have not agreed to a custodial arrangement, the court [is] required to include in its judgment a written finding

---

plement, unless otherwise indicated.

**3.** Besides the findings quoted in the text, the circuit court's judgment also contains the following general statement:

The Court has heard evidence over the course of five days, which included the testimony of the parties and several witnesses on behalf of each party, and numerous exhibits. The Court carefully considered the evidence and testimony presented. The Court made judgments regarding the credibility of each witness. The Court accepted some testimony as credible and rejected other testimony as not credible. The findings and conclusions made by the Court in this Judgment for Dissolution of Marriage

are consistent with the Court's determination of the appropriate weight of the evidence and the credibility of each witness. While we do not doubt the sincerity of this statement, it essentially advises the reader that the court has made findings and credibility determinations consistent with the result the court has reached, even if those findings and credibility determinations are not stated explicitly. Such a statement cannot save a judgment lacking specific findings where, as here, statutes unambiguously require explicit written findings, and the aggrieved party has brought the issue to the trial court's attention in a timely post-judgment motion.

based on the public policy in section 452.375.4 and the factors listed in section 452.375.2(1) to (8), detailing the specific relevant factors that make the chosen arrangement in the best interest of the child." *Buchanan v. Buchanan*, 167 S.W.3d 698, 701–02 (Mo. banc 2005) (footnote omitted). "So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required." *Id.* at 702.

While the trial court need not discuss factors that are not relevant, it is required to discuss those that are. "The purpose for the statutory requirement to detail the factors is to allow for more meaningful appellate review." If the required findings are not made, we must reverse the custody award and remand to the trial court for its entry of such findings, as the burden is upon the court to issue [proper] written findings.

*Davis v. Schmidt*, 210 S.W.3d 494, 503 (Mo.App.W.D.2007) (citations omitted).

A "checklist" which merely lists the best interest factors enumerated in § 452.375.2, and indicates which parent each factor favors, is insufficient to comply with the statutory mandate. We rejected such a "checklist" approach in *Schlotman v. Costa*, 193 S.W.3d 430 (Mo.App. W.D.2006). In *Schlotman*, an amended judgment contained only an exhibit titled "Section 452.375 Summary of Relevant Factors," which was incorporated into the judgment. *Id.* at 433. On appeal, the court described the exhibit as follows:

The incorporated exhibit consisted of a checklist of the best interest factors of

452.375.2. Next to the list of factors were two columns, one for Mother and one for Father. The trial court marked each factor in favor of Mother or Father, presumably depending upon which factor weighed in favor of the particular parent. There was no other discussion on whether the proposed relocation was in the best interests of the children. *Id.* The court held that the trial court's markings on the checklist did "not allow meaningful appellate review," and reversed and remanded because the absence of findings left the appellate court unable to determine whether the decision was against the weight of the evidence. *Id.* at 433–34.

The judgment in *Davis* contained a similar checklist, "which did not contain any discussion or factual detail, but merely a series of 'X' marks in a column" next to a listing of the § 452.375.2 factors. 210 S.W.3d at 504. Following *Schlotman*, *Davis* likewise concluded that the checklist "prevent[ed] any meaningful appellate review of Father's claims on appeal and must be remanded for those findings and entry of an award of custody in accordance therewith, as properly supported by the evidence presented at trial." *Id.*

In this case, the trial court did not merely place a mark in a column indicating which parent a particular best-interest factor favored. However, while its discussion of the § 452.375.2 factors was written in a narrative form, the judgment merely listed the relevant factors and stated the court's ultimate conclusion as to which parent a particular factor favored, with "no other discussion." *Schlotman*, 193 S.W.3d at 433.[4] Moreover, as we explain in greater

---

**4.** We recognize that, after listing the § 452.375.2 factors, the trial court made two additional findings: concerning the parties' purported agreement that Mother would be a "stay-home" parent, and that the parties had

"typical," "not uncommon" issues with their son, and between themselves concerning parenting issues, and that "[o]ne event does not erase all prior behavior." We fail to see how these additional findings adequately address

detail below, the parties vigorously disputed the appropriate custodial arrangements for the children, and Father made serious allegations concerning Mother's fitness, going so far as to propose that she be permitted to exercise only supervised visitation. In these circumstances, and for the reasons stated in *Schlotman* and *Davis,* the trial court's discussion of the best-interest factors, was insufficient, and requires reversal.[5]

## B.

In Point IV Father argues that the trial court failed to make the findings required by § 452.375.6 when it rejected the three parenting plans proposed by Father, Mother, and the Guardian *ad Litem,* and instead adopted its own parenting plan.

In addition to requiring findings on the best-interest factors listed in § 452.375.2 and the public policy identified in § 452.375.4 whenever the court does not adopt an agreed custodial arrangement, § 452.375.6 also requires a specific explanation of the trial court's reasons for rejecting the parties' parenting plans: "If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement."

Here, Father, Mother and the Guardian *ad Litem* submitted separate parenting plans, which differed in material respects. Father's proposed parenting plan awarded him sole legal and physical custody of both children, and afforded Mother only supervised visitation. Mother's proposed parenting plan gave her sole legal custody of both children, but awarded joint physical custody. Mother's proposal allowed Father parenting time from Thursday afternoon through Sunday evening in half of the weeks, and from Thursday afternoon until Friday morning in alternating weeks, with two nonconsecutive weeks during the summer. The Guardian *ad Litem* proposed that Father have sole legal custody of both children, based on her conclusion that, "[d]uring the parties' separation they have shown no ability to share in the decision making process and therefore, it is not best for the children that the parents have joint legal custody." Under the Guardian *ad Litem's* proposal, Father would have physical custody of the son, and Mother of the daughter; each parent would have visitation with the other child on Wednesday evenings, and each parent would have both children on alternate weekends.

The trial court rejected all of these proposals, and instead adopted its own parenting plan, which awarded the parties joint legal and physical custody over both children. The court's parenting plan awarded Father parenting time on every other weekend from Friday afternoon through Monday morning. The court's plan also provided for Father to have four hours of parenting time on Tuesday and Wednesday evenings in one week, and overnight on Thursday in the alternating week. Father would have four weeks of summer vacation residential time, with up to two weeks being consecutive. Thus, besides

the statutory best-interest factors, to the extent they address those factors at all.

5. Although we have found the trial court's findings in this case to be insufficient and to require a remand, we emphasize that "[t]he requirements of section 452.375.6 are not intended to be a linguistic or grammatical trap." *Strobel v. Strobel,* 219 S.W.3d 295, 300 (Mo.App. W.D.2007). *Alberswerth v. Alberswerth,* 184 S.W.3d 81, 90–93 (Mo.App. W.D. 2006), contains a helpful review of prior decisions addressing the sufficiency of the factual findings in particular judgments.

providing for joint legal and physical custody (which none of the interested parties proposed), the parenting time afforded Father under the plan adopted by the circuit court significantly differed from that provided in any of the proposed plans, and appears to have given Father slightly less parenting time during the bulk of the year than even Mother had proposed. Despite the rejection of all three proposed plans, however, the court's judgment fails to identify the factors which led it to adopt the parenting arrangement it chose, and reject each of the parties' proposals. This was error; under § 452.375.6, the trial court was required to "detail[ ] the specific relevant factors resulting in the rejection of [the proposed] arrangement[s]." *See Davis,* 210 S.W.3d at 504; *Belcher v. Belcher,* 106 S.W.3d 601, 603 (Mo.App. W.D. 2003); *Cunningham v. Cunningham,* 143 S.W.3d 647, 650 (Mo.App. E.D.2004). The trial court must remedy this omission on remand.

### C.

■ Father asserts in Point I that the trial court erred in failing to make specific findings regarding domestic violence as required by §§ 452.375.2(6); 452.375.13 and 452.400. Section 452.375.2(6) specifically lists, among the factors that the trial court shall consider in determining the children's best interests,

> [t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights

shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm.

Similarly, § 452.375.13 provides:

> If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501 ... has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence or abuse, as defined in sections 455.010 and 455.501 ... from any further harm.[6]

"While section 452.375 does not define 'domestic violence,' we have recognized that the meaning of 'domestic violence,' for purposes of section 452.375.13, 'may be gleaned from [section] 452.400.'" *Granger v. Granger,* 217 S.W.3d 927, 930 (Mo.App. S.D.2007) (quoting *Copeland v. Copeland,* 116 S.W.3d 726, 731 (Mo.App. S.D.2003)). "Section 452.400.1 states that in determining visitation rights, a court shall consider the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on the other person." *Id.* (citation omitted).

Where "the record at trial evidence[s] the occurrence of domestic violence between the parties, the trial court [i]s required 'to make a record to determine whether domestic violence occurred.'" *Granger,* 217 S.W.3d at 930 (quoting *Mund v. Mund,* 7 S.W.3d 401, 404 (Mo. banc 1999)); *see also Dickerson v. Dickerson,* 55 S.W.3d 867, 872 (Mo.App. W.D. 2001) ("If the record reflects evidence of domestic violence, the trial court must

---

**6.** Section 452.400.1 applies to the visitation rights afforded to "[a] parent not granted custody," and is therefore not literally applicable here.

make written findings consistent with these statutory provisions."). "Upon finding that any domestic violence occurred, the trial court must make the required further findings as specified in" § 452.375.13. *Mund*, 7 S.W.3d at 405. "In addition, if the trial court finds that a pattern of domestic violence occurred and that awarding custody to an abusive parent is in the best interest of the child, then the trial court must also enter written findings of fact and conclusions of law pursuant to section [452.375.2(6)]." *Id.* "Compliance with the requirements of subsections 452.375.2(6) and 452.375.13 is mandatory." *Dickerson*, 55 S.W.3d at 872.

Here, the record contains evidence of domestic violence. Father alleged that Mother physically and emotionally abused him and their son during the marriage. Father described multiple incidents in which Mother engaged in assaultive behavior towards Father or their son, including incidents in which Mother: (1) hit their oldest child in the face; (2) repeatedly squeezed the child's hands as hard as she could until he cried; (3) jumped on Father and repeatedly punched him in the chest in front of their oldest child; (4) held her child and Father hostage in the couple's bedroom after poking the oldest child in the eye, causing the child to repeatedly dial 911; (5) tried to repeatedly push her child down while Father was trying to remove him from Mother's violent episode. One of these incidents was documented by a report of the responding law enforcement officers. Similarly, the court-appointed psychiatrist testified that the older child reported that he was scared of Mother due to her past behavior. Another witness, a minister, testified that Mother repeatedly changed her story about bruises and scratches on the couple's infant daughter during a supervised visitation, claiming at one point that the four inch scratch on the infant's head was "her lipstick."

We recognize that Mother denied each of the incidents reported by Father, and we in no manner suggest that the trial court was required to believe the evidence of domestic violence which Father offered. However, in the face of such evidence, the trial court was required to make findings explicitly determining *whether* domestic violence had occurred, and any additional findings required by §§ 452.375.2(6) and 452.375.13 in the event the court found that such domestic violence had occurred.

While the trial court failed to make an express finding as to whether domestic violence occurred, we note that the trial court's Judgment refers to "typical" and "not uncommon" disputes between the parents, and then states that "[o]ne event does not erase all prior behavior." It is unclear from the record what "one event" the trial court was referring to. However, to the extent the "one event" constituted an incident of domestic violence, the trial court was required by § 452.375.13 to make further findings that its custodial arrangement best protected the victim(s) of that domestic violence from further harm. Unlike § 452.375.2(6), the mandate of § 452.375.13 applies "if *any* domestic violence occurred, whether or not it is a pattern of conduct." *Dickerson*, 55 S.W.3d at 872.

### D.

Finally, Father argues in Point III that the trial court failed to make a finding regarding Mother's mental health as required by § 452.375.2(6). Section 452.375.2(6) requires that when determining custody and the best interests of the children, the trial court must consider "the mental and physical health of all individuals involved." Here, the Judgment simply states that the court "did not find this

factor to be applicable to the evidence presented or to weigh in either party's favor."

As we have noted above, the Missouri Supreme Court has made clear that, "[s]o long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required." *Buchanan*, 167 S.W.3d at 702. Here, Mother's mental health was a contested issue at trial. The court-appointed psychiatrist, Dr. Inniss, requested that Dr. Hough, a clinical psychologist, conduct an examination of Mother and Father. Dr. Hough testified at trial that his clinical evaluation of Mother was "highly suggestive of narcissistic personality disorder." Dr. Hough testified that treatment could help mitigate this condition, but that it is a "long-term, arduous project" that moves at "glacial speeds." Based on Dr. Hough's findings, Dr. Inniss also concluded that Mother's testing was highly suggestive of a narcissistic personality disorder with histrionic and sadistic features. As a result, Dr. Inniss opined that Mother's "pattern of getting physical" with the couple's older child was "of major concern," and that "the likelihood for it to reoccur is extremely high," and "the potential for injury to the child or children is high." Dr. Inniss accordingly recommended that Father be awarded sole legal and physical custody. These expert opinions were contested by Mother's retained expert, Dr. Claiborn, who concluded, based on the findings of two treating psychiatrists and a treating therapist, that Mother suffered from an adjustment disorder, "which is about the mildest mental health diagnosis that DSM allows," and is typical of a person going through a stressful marital dissolution. Dr. Claiborn also questioned the conclusions drawn by Dr. Hough and Dr. Inniss, and conducted his own psychological testing of Mother which produced materially different results.

Given the competing evidence and opinions concerning Mother's mental health (of which we have offered only the barest summary), the status of Mother's mental health was plainly "subject to contest between the parties," and "required the court's resolution" by "written findings." *Buchanan*, 167 S.W.3d at 702.

\* \* \* \* \* \*

For the reasons discussed above, we are constrained to reverse the trial court's custody determination, and remand the custody issues for the entry of findings of fact which comply with the statutes discussed above. Father's Point V argues that we should review the trial court's custody determination on the merits, and reverse it because it is unsupported by substantial evidence and is against the weight of the evidence. However, because of the absence of necessary findings we are unable to meaningfully review Father's challenge to the merits of the custody determination at this time, and therefore decline to address Point V. *Huber ex rel. Boothe v. Huber*, 174 S.W.3d 712, 717 (Mo.App. W.D. 2005).

## II.

In his sixth and final Point Relied On, Father argues that the trial court erred by failing to specifically address each of the factors specified in § 452.335 when determining the amount and duration of spousal maintenance to which Mother was entitled. Father also argues that the amount of the trial court's maintenance award is not supported by substantial evidence, and that the evidence warranted an award of limited duration. We disagree.

"The trial court has broad discretion in awarding maintenance, and its deci-

sion will not be overturned absent an abuse of discretion." In determining whether the trial court abused its discretion, this court reviews the evidence in the light most favorable to the judgment of the trial court, disregarding all contrary evidence. Deference is given to the judgment of the trial court even if the evidence could support a different conclusion.

*Russum v. Russum*, 214 S.W.3d 376, 379 (Mo.App. W.D.2007) (citations omitted).

Section 452.335 governs the award of maintenance. Section 452.335.1 establishes a two-part threshold test for determining a spouse's entitlement to an award of maintenance:

> In a proceeding for ... dissolution of marriage ..., the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:
>
> (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
>
> (2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 452.335.2 then provides that, in determining the amount and duration of a maintenance award, the trial court shall consider "all relevant factors," including:

> (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (3) The comparative earning capacity of each spouse;
>
> (4) The standard of living established during the marriage;
>
> (5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
>
> (6) The duration of the marriage;
>
> (7) The age, and the physical and emotional condition of the spouse seeking maintenance;
>
> (8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
>
> (9) The conduct of the parties during the marriage; and
>
> (10) Any other relevant factors.

In this case, the trial court's judgment makes the following findings concerning the parties' relative incomes:

> The Court finds that Father's income [as a lawyer in private practice] has varied greatly over the past four years because of his bonuses not because he was purposely doing so.
>
> The Court finds that Father's year to date income as of August 31, 2009 is $7,210 per month but that it is not representative of his expected/anticipated income this year as evidenced by Father's income in previous years. The Court finds that Father's income for purposes of the Maintenance and child support is $13,882 per month which is an average using Father's 2007, 2008 and year to date income.
>
> The Court finds that Mother's income is practically zero. Mother has not concretely expressed her plans with regard to the work force or re-education. This Court does not find that Mother is capa-

ble of re-employment in the reasonably near future.

The court's Judgment also finds that "the parties enjoyed a lifestyle that their income could not support" during their marriage, that both Father and Mother had overstated their reasonable living expenses, and that Mother's reasonable living expenses were $5,000 per month. The Judgment recites that "[t]he Court considered all the evidence and factors set forth in [§ ] 452.335, R.S.Mo.1998, in its determination of Mother's request for maintenance," and awards Mother $3,000 per month in modifiable maintenance, "until further order of the Court."

Father's primary attack on the maintenance award is his claim that the trial court erroneously failed to make the factual findings required by §§ 452.335.1 and 452.335.2 to support the award. Father concedes, however, that he did not make a request under Rule 73.01(c) for specific findings on maintenance issues before the reception of evidence at trial. While the Missouri Supreme Court has held that a Rule 73.01(c) request for findings is not necessary to trigger the trial court's statutory obligation to make findings on child custody issues under § 452.375.6, *see Buchanan,* 167 S.W.3d at 701 n. 3, such a request *is* required where a party desires findings on the factors relevant to a maintenance award. Thus, *In re Marriage of Murphy,* 71 S.W.3d 202 (Mo.App. S.D. 2002), rejected an argument similar to Father's:

> Here, the trial court did not make an express finding as to the amount of Wife's reasonable needs nor did it make findings of record about what income and expense evidence it used in setting Wife's maintenance award. However, the absence of such findings is not a sufficient ground for reversing the maintenance award. When, as here, neither

party requested findings of fact and conclusions of law pursuant to Rule 73.01(c), fact issues are deemed to have been resolved by the trial court in accordance with its award of maintenance.

*Id.* at 205–06 (citing *Stangeland v. Stangeland,* 33 S.W.3d 696, 701 (Mo.App. W.D. 2000) (other citation omitted)).

Given Father's failure to make a timely request for factual findings, the absence of explicit findings cannot itself justify reversal. Beyond arguing that the necessary findings were omitted, Father makes a series of factual arguments concerning the trial court's maintenance award. None of them justify reversal. Thus, Father argues that the trial court overstated his income for purposes of determining an appropriate maintenance award. However, while Father's 2009 income-to-date may have been lower than in prior years, Father's income in those earlier years, as evidenced both by his tax returns and by Mother's testimony, provided a substantial evidentiary basis for the trial court's determination that income of $13,882 per month was an appropriate figure to employ in assessing maintenance. *See Potts v. Potts,* 303 S.W.3d 177, 193 (Mo.App. W.D.2010) (affirming trial court's attribution of annual income of $144,000 per year to husband, based on evidence of earnings in earlier years, despite his claim of an earning capacity of less than $70,000).

■ Father also argues that the trial court abused its discretion in determining that Mother's income was "practically zero." Instead, Father asserts that Mother is capable of earning $180,000 a year from her design business. However, although testimony reflected that the *gross* income for Mother's design business exceeded $179,000 in 2002, the net income from the business was only $83,000. More importantly, Mother testified that 2002 was an unusually good year for reasons

she explained, and Father presented no other evidence regarding the profitability of Mother's design business. In addition, Mother testified that she had not worked full time in "almost seven years," and that considering the economy, she expected that it would take "quite a bit" of time for her to update her skills to again become employable in the design field. She also testified that, although she had part-time employment at the time of trial, her expenses associated with that employment equaled or exceeded the income she was generating.

■■■ In these circumstances, the trial court did not err in failing to impute income to Mother.

> The trial court may impute income to a party seeking maintenance according to what she could earn by use of her best efforts to gain employment suitable to her capabilities. The trial court's determination of whether to impute income to a party is within its discretion and we will not reverse the trial court's determination absent a manifest abuse of that discretion.

*C.K. v. B.K.*, 325 S.W.3d 431, 436 (Mo.App. E.D.2010). We find no "manifest abuse of discretion" in the trial court's ruling in this case.

■■■ Father also argues that the trial court failed to appropriately consider the marital property awarded to Mother in the dissolution decree, and the marital property she either took, or that Father provided to her, during the pendency of the dissolution proceeding. Although a recipient spouse "should not be required to deplete or consume her marital assets before being entitled to maintenance," "income which may be earned by investment of marital property must be considered in making a maintenance award." *Breihan v. Breihan*, 73 S.W.3d 771, 777–78 (Mo.App. E.D.2002); *see also Cohen v. Cohen*, 178 S.W.3d 656,

668 (Mo.App. W.D.2005). Father's brief recites the dollar value of the marital assets awarded to Mother (some of which, such as "household goods" and a car valued at $12,000, appear incapable of generating income). Father makes no argument, however, as to the income Mother was capable of deriving from those assets, or as to how any such income should have impacted the maintenance award. We perceive no basis for reversal.

■■■ Finally, Father argues that the trial court should have limited the duration of Mother's maintenance award, based on her statements concerning her prospects for reemployment. Despite Father's contention that Mother "admitted that she would only need maintenance for 'one year,'" Mother in fact testified that "I don't know if I need [maintenance for] a year or farther." When asked when she expected to be reemployed, Mother testified that, "based on the economy, I don't know. I can't give you a direct answer on that."

■■■ Given this testimony, the trial court acted within its discretion in entering a modifiable maintenance award of indefinite duration.

> Once a court determines that maintenance is appropriate, the court has broad discretion in determining the amount and duration of maintenance. There is a judicial preference for awards of unlimited maintenance. Limitation on the duration of maintenance is justified only where substantial evidence exists of an impending change in the financial conditions of the parties. A maintenance award should not be based on speculation as to future conditions of the parties. Neither an appellate court nor a trial court may speculate on what the future might justify; rather, such a determination should be made in a pro-

ceeding for modification of the award upon a showing of changed circumstances.

*Souci v. Souci,* 284 S.W.3d 749, 759 (Mo. App. S.D.2009) (citations, footnote, and internal quotation marks omitted); *accord, Alberty v. Alberty,* 260 S.W.3d 856, 862 (Mo.App. W.D.2008); *Garrison v. Garrison,* 255 S.W.3d 37, 42 (Mo.App. W.D. 2008).

### Conclusion

The circuit court's child custody determination is reversed, and the case is remanded for entry of statutorily required findings on these issues. Our disposition does not require that the trial court conduct further evidentiary hearings. The court's award of modifiable maintenance of $3,000 per month to Mother is affirmed.

All concur.