

# Missouri Court of Appeals
## Southern District

### In Division

In Re: The Marriage Of )
)
J.J, )
)
    Petitioner-Appellant, )
)
v. )    No. SD38576
)
)    Filed: **March 27, 2025**
D.J., )
)
    Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF CARTER COUNTY

Honorable Steven F. Lynxwiler, Judge

**<u>AFFIRMED</u>**

Following a bench trial, J.J. ("Mother") appeals the trial court's judgment denying her Motion to Modify, in which she sought joint legal and sole physical custody of the parties' minor child ("Child"). Mother argues the trial court erred because its §452.375.2 analysis was "flawed, incomplete, and wholly inadequate," in that it considered "touching incidents" at Child's school outside of the §452.375.2(1)-(8) factors. Mother contends that these incidents should have been discussed under §452.375.2(5) and (6).[1] Because the trial court committed no error, we affirm.

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016 as amended through April 24, 2024, the date of the trial.

1

**Facts**

Child was born in February of 2014 to Mother and D.J. ("Father"). In April of 2018, a Judgment of Dissolution of Marriage granted Mother and Father joint legal and physical custody of Child and scheduled equal visitation time. Father's residence in the Ellsinore area was designated as Child's primary residence for mailing and education purposes, and Mother and Father agreed that Father's parents, who lived nearby, would babysit Child.

In March of 2021, Mother relocated to Marble Hill, Missouri, 64 miles from Child's primary residence in the Ellsinore area, and she sent Father a relocation letter pursuant to §452.377. Father filed a motion opposing the relocation and Mother failed to respond, extinguishing her relocation request. Mother then filed a Motion to Modify, alleging continuous and substantial changes and requesting sole physical custody of Child.

A bench trial was held on June 9, 2023. Mother testified that she wanted to relocate Child because she wanted to live with her boyfriend in Marble Hill. Mother also testified that Child had been "inappropriately touched" at school on two occasions. The first incident happened on the school bus, after which the offending child was removed from the bus. The second incident occurred in a classroom involving a different student.

Father acknowledged the touching incidents but testified that Child wished to remain at his school. Father submitted a letter from Child's teacher, K.S., in which K.S. stated that she spoke with Child and that Child wanted to remain at his current school and visit Mother every other weekend. All of Child's friends attended his current school, where Child was excited to play baseball and basketball. Child's Guardian ad Litem testified, "Based on my interview with both parents and with [Child], I feel it's in [Child]'s best interest to reside with his father, go to [his current school]."

On April 4, 2024, the trial court denied Mother's Motion to Modify. In its Judgment of Modification, the trial court included written findings of fact and conclusions of law pursuant to §452.375.2:

**FACTOR 1**: **The wishes of the child's parents as to custody and proposed parenting plans submitted by both parties.** Mother's Parenting Plan would uproot the minor child from the home he has known since birth, the school he has attended for the last four years, and all of his childhood friends. It would move him to a different county and different school. Whereas. [sic] Father's Parenting Plan maintains the status quo of home and school. Therefore, this factor heavily favors Father.

**FACTOR 2: The needs of the child for frequent, continuing, and meaningful relationship with both parents and the ability and willingness of the parents to perform their functions as mother and father for the needs of the child.** Both Parenting Plans give the parents a frequent, meaningful, and continuing relationship with the child. It is only due to Mother's unauthorized relocation to another town in a different county that has caused Mother to not exercise her custody during the school year. Therefore, this factor favors neither party.

**FACTOR 3: The interaction and relationship of the child with the parties, siblings, or other persons who may significantly affect the child's best interests.** Father has an unbreakable bond with the minor child, and the minor child enjoys being around Father's extended family which consists of numerous aunts, uncles, cousins, and grandparents. The minor child spends considerable time with the Father's parents. It was the testimony that both Mother and Father wanted Father's parents to act as babysitters, and this arrangement was acceptable until Mother relocated to the Glen Allen/Marble Hill area. Whereas Mother's home consists of her paramour and paramour's fifteen-year-old son with no family members other than Mother. Therefore, this factor favors Father.

**FACTOR 4: Which parent is more likely to allow the child frequent, continuing, and meaningful contact with the other parent.** Once again, Father's Parenting Plan is well suited for the child during the school year as it was Mother who relocated to the Glen Allen/Marble Hill area without following the statutory requirements. Thus, the distance in driving that Mother complains about is all a direct result of Mother's move. Mother's Parenting Plan would require Father to drive back and forth between his home in Grandin and the home of Mother's paramour, or the Woodland school, only and solely because Mother chose to relocate. Therefore, this factor favors Father.

**FACTOR 5: The child's adjustment to home, school, and community.** The child is very well adjusted to his home, school and community in the Grandin/Ellsinore area. The child loves to play with his friends and even insisted

3

on riding the school bus so he can be with his friends. The child is thriving at the East Carter school where he is happy and has many friends. Whereas there was no evidence concerning the proposed Woodland school from Mother. Mother could identify no children that would be in the same class as the child if the child was put in Woodland school. Therefore, this factor heavily favors Father.

**FACTOR 6: The mental and physical health of all individuals involved, including any history of abuse.** There was no evidence or testimony with regard to any physical or mental health nor domestic violence by either party. Therefore, this is not a factor and doesn't favor either party.

**FACTOR 7: The intention of either party to [re]locate the principal residence of the child.** Father has lived in the same home with the minor child since the date of the child's birth. Mother has relocated at least three times, all without proper notice, and is presently living with her paramour with no legal recourse if the paramour was to force her out at any time. Therefore, this factor favors Father.

**FACTOR 8: The wishes of the child.** The Guardian Ad Litem spoke to the minor child, and the child indicated that he wanted to keep attending school at Ellsinore. The child's third grade teacher, in Exhibit 4, indicated that the child wanted to spend every other weekend with the Mother. Father testified that the child only wanted to spend every other weekend with Mother. Therefore, this factor favors Father.

(Factors altered in bold).

The touching incidents were not discussed under the trial court's §452.375.2 analysis, but in the paragraph immediately following:

As shown by Exhibit 3, Mother's relocation to Glen Allen/Marble Hill area, and her hopes of moving the child to the Woodland school, was based mainly on convenience to the Mother. Although Mother cited at least two examples of the minor child being inappropriately touched by two other students at school during this four-year period at school, Father believes that eventually the school took the appropriate action. The minor child was cleared by a counselor and has had no effects from these allegations. Since Mother was not privy to any type of discipline either one of these students may have received at Ellsinore school, Mother's complaint that Ellsinore school is not a proper school for the minor child lacks any evidentiary value.

Mother filed a Motion to Set Aside, Vacate, or Amend Judgment, alleging, in relevant part, the trial court "completely failed to mention the molestation incidents at any point during

4

the analysis undertaken pursuant to 452.375 RSMo and the eight factors set forth therein." Specifically, Mother argued the touching incidents "should have been mandated" under §452.375.2(5), "[t]he child's adjustment to the child's home, school, and community," and "[t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved" under §452.375.2(6). Mother's motion was denied.

This appeal followed.

## Standard of Review

In our review of a bench-tried case, this Court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. ***Murphy v. Carron***, 536 S.W. 2d 30, 32 (Mo. banc 1976). On appeal, "[t]his Court applies *de novo* review to questions of law decided in court-tried cases." ***Pearson v. Koster***, 367 S.W.3d 36, 43 (Mo. banc 2012). "With respect to such questions, 'the appellate court reviews the trial court's determination independently, without deference to that court's conclusions.'" ***Id***. at 43-44 (quoting ***Moore v. Bi–State Dev. Agency***, 132 S.W.3d 241, 242 (Mo. banc 2004)). "In reviewing [sic] questions of fact, [we] defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested." ***Id***. at 44 (citing ***White v. Dir. of Revenue***, 321 S.W.3d 298, 308 (Mo. banc 2010)).

## Analysis

In her sole point, Mother argues the trial court erred because its §452.375.2 analysis was "flawed, incomplete, and wholly inadequate," in that the touching incidents were discussed "outside" of the §452.375.2(1)-(8) factors. Mother contends that the touching incidents should have been considered under §452.375.2(5) and (6).[2]

---

[2] In the argument section of her brief, Mother also asserts that the trial court adopted Father's Proposed Judgment verbatim. To the extent that Mother argues that this was potentially error, "[c]laims of error raised in the argument

"Under §452.375.6, where 'the parties have not agreed to a custodial arrangement, the court [is] required to include in its judgment . . . the factors listed in [§]452.375.2(1) to (8), detailing the specific relevant factors that make the chosen arrangement in the best interest of the child.'" *Hall v. Hall*, 336 S.W.3d 188, 192–93 (Mo. App. W.D. 2011) (quoting *Buchanan v. Buchanan*, 167 S.W.3d 698, 701–02 (Mo. banc 2005) (footnote omitted)). "A 'checklist' which merely lists the best interest factors enumerated in [§]452.375.2, and indicates which parent each factor favors, is insufficient to comply with the statutory mandate." *T.J.W. v. K.T.*, 614 S.W.3d 637, 642 (Mo. App. S.D. 2020) (quoting *Hall*, 336 S.W.3d at 193). "The purpose for the statutory requirement to detail the factors is to allow for more meaningful appellate review." *Id.* (quoting *Huber ex rel. Boothe v. Huber*, 174 S.W.3d 712, 716 (Mo. App. W.D. 2005)).

Here, the parties did not agree to a custodial arrangement. The trial court, therefore, was required to make findings under §452.375.2(1)-(8) that were relevant to its custody determination. In the Judgment of Modification, the trial court quoted each factor under §452.375.2(1)-(8) and found all but §452.375.2(6) were relevant to its custody determination.

Mother's reliance on *T.J.W.* to support her claim that the trial court's findings are insufficient is unpersuasive. Here, unlike in *T.J.W.*, the trial court's conclusions were supported by detailed facts made applicable to both Mother and Father, and were more than a mere checklist. *See T.J.W.*, S.W.3d at 640 (holding that the trial court erred by merely stating "[t]his factor weighed in favor of the Father" without explaining the basis for its conclusion.). While Mother argues the "touching incidents" were discussed "outside" of the trial court's §452.375.2 analysis, "[t]here is no prescribed format or magic formulation that the [trial] court must include

portion of a brief that are not raised in a point relied on are not preserved for our review." *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (quoting *Davis v. Wieland*, 557 S.W.3d 340, 352 n.10 (Mo. App. W.D. 2018)).

in its judgment in order to comply with the statutory requirements found in [§]452.375.6[.]" *Harris v. Harris*, 663 S.W.3d 905, 911 (Mo. App. E.D. 2023) (quoting *Prevost v. Silmon*, 645 S.W.3d 503, 515 (Mo. App. W.D. 2022)).  Here, the Judgment of Modification makes clear that the trial court considered these touching incidents when making its custody determination, and such consideration is not undone by the mere fact that they were addressed in one section of the Judgment versus another.

Further, Mother's argument that the trial court's analysis was "flawed" or "incomplete" because it did not give enough weight to her testimony when analyzing the factors under §452.375.2 is inconsistent with our standard of review.  *See Pearson*, 367 S.W.3d at 44 ("[o]nce contested, a trial court is free to disbelieve any, all, or none of th[e] evidence, and the appellate court's role is not to re-evaluate testimony through its own perspective.") (internal citations omitted).  The trial court found that Mother's testimony about Child's current school lacked evidentiary value, and we give deference to that finding.  Mother's point is denied.

## Conclusion

The judgment of the trial court is affirmed.


MATTHEW P. HAMNER, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

7