**Nancy Ann MYERS, Plaintiff–Respondent,**

v.

**Donald Dean MYERS, Defendant–Appellant.**

**Nos. 17987, 18032.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 21, 1992.

William E. Hickle, Carnahan, Carnahan & Hickle, Rolla, for defendant/appellant.

John A. Clayton, Thomas, Birdsong & Clayton, P.C., Rolla, for plaintiff/respondent.

MONTGOMERY, Presiding Judge.

The Circuit Court of Phelps County entered a decree dissolving the marriage of Nancy Ann Myers (Wife) and Donald Dean Myers (Husband) on February 14, 1992. After dividing the marital and non-marital property according to the parties' agreement, the trial court awarded custody of three minor children to Wife, with child support of $380 per month per child. The court ordered Husband to pay Wife modifiable maintenance of $700 monthly for two years. Thereafter, the maintenance award reduced to $250 monthly until the death or remarriage of Wife. Husband appeals complaining only about the maintenance award. The following facts are relevant to that award.

The parties were married November 22, 1969. Three children were born of the marriage. At the time of trial, John was age 16, Patricia was age 14, and Suzanne was age 12.

Husband holds a bachelor's and master's degree in engineering as well as a juris doctor degree. Since 1979, except for a one-year leave of absence, Husband has been employed at the University of Missouri–Rolla as an administrator and professor of engineering management. His gross salary at the time of trial was $64,460 annually. He occasionally does outside consulting work which adds approximately $100 monthly to his income. In 1991, Husband's consulting income was less than $500.

Wife is a registered nurse. She also holds a college degree in business administration. After the parties married, Wife attended nursing school, graduating first in her class. Afterwards, she worked six months at St. Mary's Hospital in St. Louis prior to the birth of her first child. Beginning in 1979, Wife worked occasionally in part-time nursing jobs. For the three years prior to trial, Wife was employed by the Rolla School System as a school nurse. Her yearly gross salary was $14,152 ($1,179.38 monthly) for nine months of work. During the school year Wife's working hours were from 8:00 a.m. to 4:00 p.m. In the summer months and occasionally during the school year, Wife worked as a part-time nurse for Meramec Home Health Care. In 1991, she earned an average gross of $255.41 monthly from that job. Wife testified her summer work is close to full-time employment. Both jobs provide Wife with a gross monthly income of $1,434.79 or $17,217.48 annually.

The evidence reveals that considerably higher paying registered nurse jobs were available to Wife at trial time. Marie Oliver, Administrator of the Rolla Manor Care Center, testified her employer currently had an opening for a registered nurse at a beginning salary of $28,000 yearly, with free health insurance. She testified of a shortage of employable registered nurses and anticipated it would take at least two months to fill the opening. The salary is based upon a 40-hour work week. This job opening provides for flexible working hours which could be set from 8:00 a.m. to 4:00 p.m. on weekdays. The nursing home also provides a "weekend deal" for registered nurses who work a 12-hour shift on Saturday and Sunday but are paid for 40 hours of work. Mrs. Oliver testified she was acquainted with Nancy Myers, and her qualifications met the requirements of the job opening.

The assistant personnel director of the Phelps County Regional Medical Center testified the hospital in Rolla employs 184 registered nurses. At the time of trial, the hospital had four openings for registered nurses, and normally has openings at any given time. The salary ranges between $24,128 to $36,171. Additionally, the hospital has an arrangement for "pool nurses" who receive an additional 17 percent on their salary with no benefits. A pool nurse agrees to work when and where in the hospital she is needed with the option to refuse the hours which are unsatisfactory to her. A regular registered nurse receives health insurance as a benefit with the cost split equally between the employee and the hospital. Nurses at the hospital work 8-hour shifts commencing at 7:00 a.m., 3:00 p.m. or 11:00 p.m. Ordinarily, the nurses with more seniority are provided with the daytime shifts.

Wife testified she preferred her school nurse job over better paying jobs because her hours of employment allowed her to be at home when the children were there. Her present job allows her to take the two youngest children to school and bring them home. Dr. Carl Burns, a psychologist, testified concerning an adjustment disorder shown by the two youngest children. Regarding Wife's possible change of job, he surmised that would probably exacerbate the children's adjustment problems if Wife were not available to them on the same basis as her present job allows.

Pursuant to the division of property, Wife received property valued at $152,266 and debts of $7,985. Included in the assets received by Wife are the following:

| | |
|---|---|
| Liquid assets in Edward D. Jones account– | $21,626 |
| Union Electric stock– | 16,758 |
| Cash paid by Husband within 90 days of decree– | 35,799 |
| Total– | $74,183 |

The property listed above is income-producing property. Deduction of $7,985 from these assets leaves Wife $66,198 for investment.

The trial court made detailed findings, mostly supported by the evidence, regarding maintenance. The trial court found Husband earns approximately $5,500 per month, with a disposable income of approximately $3,500 per month. After payment of $1,140 monthly child support, Husband is left with approximately $2,360 monthly disposable income.

The trial court found Wife earns an average of $1,300[1] monthly with a disposable income of $1,200 monthly. The reasonable needs of Wife and the children were determined to be $3,019 monthly. After deduction of $1,140 monthly child support, and Wife's disposable income of $1,200, the court found Wife had $679 monthly in uncompensated needs. The court determined that Wife could expect $100 monthly income from the income-producing property set aside to her.

Continuing, the court found "[Wife] has an affirmative duty to seek adequate employment in order to be self-supporting as soon as possible" and is "capable of earning more than her present salary as a registered nurse with employment at a hospital or nursing home in her present home town." The court determined such employment would increase her monthly income by about $500, but it would also deny her the opportunity to work part time that she now enjoys. The court found the two youngest children suffer from an "adjustment disorder and that to require [Wife] to seek a new job at this time would be psychologically detrimental to the children's

health." An order was then entered requiring Husband to pay Wife maintenance in the amount and for the duration recited herein.

■ Husband's sole point complains the maintenance award was against the weight of the evidence, that the court failed to properly consider Wife's income-producing property and failed to impute her potential income from employment readily available to her. We agree with Husband and find it unnecessary to address the remaining prong of this point.

We review an award of maintenance only for an abuse of discretion. *In re Marriage of Swofford*, 837 S.W.2d 560, 564 (Mo.App. 1992); *Cooper v. Cooper*, 778 S.W.2d 694, 697 (Mo.App.1989). A decree awarding maintenance will be affirmed unless the award is against the weight of the evidence or erroneously declares the law. *Id.* The burden is on the party challenging the award of maintenance to show the award was an abuse of discretion. *Id.* If the appellate court finds the trial court abused its discretion, the appellate court is obligated to enter the judgment the trial court should have entered. *In re Marriage of Runez*, 666 S.W.2d 430, 433 (Mo.App.1983); *Tygett v. Tygett*, 639 S.W.2d 282, 285 (Mo. App.1982).

Section 452.335.1[2] reads:

In a proceeding for … dissolution of marriage … the court may grant a maintenance order … only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

---

1. Wife testified her school nurse job paid $1,179.38 gross monthly. In 1990, her average monthly gross earnings from Meramec Home Health Care were $119.58. Obviously the trial court relied on these two numbers to find Wife's earnings at approximately $1,300 monthly. Yet, the evidence was undisputed that Wife earned an average of $255.41 gross monthly from Meramec in 1991. The record does not reveal why the trial court ignored her actual 1991 earnings.

2. Statutory references are to RSMo Cum.Supp. 1991.

Wife is only entitled to maintenance if she can satisfy the two conditions mentioned above. The record shows Wife received income-producing property in the amount of $66,198 after payment of the debts apportioned to her. The trial court erroneously found Wife's property would produce $100 monthly income. That finding assumes an annual return of less than 2 percent on Wife's property. Husband introduced evidence that Wife could invest in AAA rated bonds at 9 percent interest, but Wife asserts here such an investment is too risky. Even applying a modest 5 percent interest rate to $66,198, Wife's available income-producing property would show a return of $275.82 monthly.

The trial court must attempt to satisfy the reasonable needs of a spouse seeking maintenance by a consideration of the earning capacity of that spouse and the division of property. *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 857 (Mo. App.1977). The focus of § 452.335.1 "seems more specifically on income-producing property . . . ." *Id.* Here, the income-producing property does result in more income to meet the needs of Wife than found by the trial court, but such amount does not meet all her needs. Therefore, the next consideration must be the earning capacity of Wife in conjunction with the income provided by her income-producing property.

"A divorcing spouse has an affirmative duty after the dissolution to seek full-time employment." *In re Marriage of Lewis,* 808 S.W.2d 919, 924 (Mo.App.1991); *Newman v. Newman,* 717 S.W.2d 568, 569 (Mo. App.1986); *Brueggemann,* 551 S.W.2d at 858. Furthermore, "a request for maintenance may be denied if the spouse is able to support herself in a course of employment which corresponds with her skills or interests." *In re Marriage of Faulkner,* 582 S.W.2d 292, 295 (Mo.App.1979).

Applying these principles to this case, it is apparent that Wife is able to support herself through full-time employment in her chosen field. She is fully qualified to work for $28,000 yearly at Rolla Manor Care Center with the same working hours as she now has. Wife has the ability to increase her 1991 earnings ($17,217.48) an additional $10,782.52 or $898.54 monthly. This increased amount, added to at least $275 monthly from income-producing property, would give Wife an additional gross monthly income of $1,173.54 if she fulfills her affirmative duty to become employed full time. Since the trial court found only $679 monthly in Wife's uncompensated needs, we find a clear abuse of discretion in the maintenance award.

We have not overlooked Wife's custody of three minor children. However, the record fails to reveal any circumstances of the children that make it appropriate Wife not be required to seek employment outside the home. § 452.335.1(2). For three years prior to the dissolution of marriage, Wife worked outside the home in essentially full-time employment. As indicated by her own employment record, Wife apparently saw no detriment to the children by such employment. Numerous cases have determined that children, similar in age to those here, do not require the mother's presence at home as opposed to her attaining employment outside the home. *See Bixler v. Bixler,* 810 S.W.2d 95, 99 (Mo.App.1991) (children ages 17 and 14); *Metts v. Metts,* 625 S.W.2d 896, 900 (Mo.App.1981) (children ages 16 and 12); *J.A.A. v. A.D.A.,* 581 S.W.2d 889, 892 (Mo.App.1979) (children ages 17, 15 and 13). The psychologist's testimony does not aid Wife nor does it form a basis for the trial court's finding that if Wife changed jobs, it would be detrimental to the children's health. The psychologist premised his opinion on the fact that a new job might not allow Wife to be available to the children on the same basis as her present employment allows. Wife's present job requires working from 8:00 a.m. to 4:00 p.m., but she has a better paying job available with the same hours. We fail to see any detriment to the children by their mother working a new job resulting in no change in the children's daily routine. Wife argues that the language in § 452.335.1(2) also "means that a person is not required to change jobs in order to receive maintenance when that change would be harmful to the children." Her

argument assumes the evidence supports a finding of harm to the children. We view the evidence otherwise.

The maintenance order is against the weight of the evidence and erroneously applies the law. We find it to be an abuse of discretion to award maintenance.

That portion of the decree awarding Wife maintenance is reversed. It is so ordered.

FLANIGAN and PREWITT, JJ., concur.