Lamona E. ANGEL, Respondent,

v.

Richard Charles ANGEL, Appellant.

No. WD 72918.

Missouri Court of Appeals,
Western District.

Nov. 22, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2011.

Application for Transfer
Denied Jan. 31, 2012.

Dennis Owens, Kansas City, MO, for Appellant.

Ross Myers, Lee's Summit, MO, for Respondent.

Before: ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

THOMAS H. NEWTON, Judge.

Mr. Richard C. Angel appeals from the trial court's judgment dissolving his marriage to Ms. Lamona E. Angel and awarding Ms. Angel maintenance. He argues that Ms. Angel failed to meet the threshold factors for an award of maintenance under section 452.335.[1] We affirm.

**Factual and Procedural Background**

The Angels married in 1985. During the marriage, the parties operated a num-

---

1. Statutory references are to RSMo 2000.

ber of businesses, the most prominent of which was an auction service. For the first three years of the marriage, Ms. Angel worked as a barber; she then began working for their auction business. Through the marriage, the parties filed joint tax returns; Ms. Angel did not receive a 1099, a W–2, or a salary from her work. Over twenty-two years, the business's gross receipts grew from the $20,000 range to over $100,000 annually. The parties also acquired a number of real properties. At the time of trial, they collectively owned thirteen properties free of debt.

In March 2008, the parties separated when Mr. Angel moved from the marital home to his farm. In July 2009, Ms. Angel petitioned for dissolution, seeking a division of the marital property and maintenance; Mr. Angel counter-petitioned.

At trial, Ms. Angel testified that she was unemployed, 62 years old, and her only income was from social security in the amount of $316 a month. She further testified that her social security was low because the Angel's businesses had not made social security contributions on her behalf, a fact that she did not learn until she filed for social security benefits after the separation. She also learned after the separation that Mr. Angel had opened a $120,000 investment account in his name only.

■ She testified to certain individual expenses that, when added together, total a minimum of $1,326.25, but it is unclear to this court what amount was alleged to be her reasonable expenses, as her income and expense statement, although admitted into evidence, was not provided to this court on appeal.[2] At trial, Mr. Angel claimed that he had forgotten about the investment account. He was 52 years old at the time of trial. His social security was calculated to be $1,500 a month when he began to draw it in the future.

In its dissolution judgment, the trial court found Mr. Angel's statement as to his alleged income of $748 not to be credible as Mr. Angel had expended significantly more than that in the months preceding the dissolution. It determined that Mr. Angel held two properties as nonmarital assets. It then awarded Ms. Angel two properties valued at approximately $230,000; household and personal items valued at $50,000; a car valued at $11,000; $40,000 of the parties' investment account; a CD valued at $86,000; and ordered Ms. Angel to pay approximately $4,400 of the parties' debt. Mr. Angel was awarded nine properties, valued at approximately $440,000;[3] household and personal items valued at approximately $16,600; three ve-

2. Although counsel for Mr. Angel stated in oral argument that Ms. Angel's statement of income and expense was not filed with the trial court, the transcript reflects her "Second Amended Income and Expense Statement" marked and admitted as Plaintiff's Exhibit 1. "It is the duty of the appellant to provide the record on appeal." Rule 81.12(c). Rule 81.12(a) directs that "[t]he record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(e) specifically mandates that "[a]ppellant is responsible for depositing all exhibits that are necessary for the determination of any point relied on." Where the record on appeal contains evidentiary omissions, we presume they support the trial court's decision. *Thomas v. Dir. of Revenue*, 874 S.W.2d 427, 429 (Mo.App. W.D. 1994).

3. One of the properties, on which the auction barn was located, was appraised at either $50,000 or $488,000 depending on the zoning, which was in dispute at the time of trial. The trial court used the lower valuation of $50,000.

hicles valued at $19,500; $70,000 of the parties' investment account; $2,000 from another account; and was ordered to pay approximately $141,000 of the parties' debt.

The parties thus received roughly an equal amount of marital assets, net of debt. Mr. Angel also received the parties' four business entities with the trial court assigning them no value. It further awarded Ms. Angel maintenance of $700 per month, finding that she lacked sufficient income to provide for her reasonable needs and that although capable of being employed, because of "her age and circumstances will have a very difficult time earning the amount of income she and [Mr. Angel] earned working together in the auction business." The maintenance was to continue until either party's death, Ms. Angel's remarriage, or further court order. Mr. Angel appeals.

### Standard of Review

■ The trial court's judgment is reviewed under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *McKown v. McKown*, 280 S.W.3d 169, 172 (Mo.App. W.D.2009). We sustain the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or applies or declares the law erroneously. *Id.* The record is viewed in the light most favorable to the judgment, and we draw reasonable inferences in the judgment's favor. *Id.* Thus, the burden to show error falls on the party

challenging the decree. *Childers v. Childers*, 26 S.W.3d 851, 853 (Mo.App. W.D. 2000). Further, "[a]s to maintenance orders, the trial court is granted broad discretion, and the evidence is viewed favorably to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Id.*

### Legal Analysis

■ In his sole point on appeal, Mr. Angel argues the trial court erred in awarding maintenance. Subsection 452.335.1 authorizes the trial court to award maintenance if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment....

The subsection thus provides a threshold test for whether maintenance should be awarded: (1) can the party meet their needs through property, including that awarded in the dissolution? (2) If not, can the party's needs be met through appropriate employment? *Childers*, 26 S.W.3d at 854. Once the trial court determines maintenance is warranted, subsection 452.335.2 further authorizes the court to award the amount of maintenance it "deems just" after considering nine statutory factors and "[a]ny other relevant factors." [4]

---

**4.** The statutory factors are:
(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
(2) The time necessary to acquire sufficient education or training to enable the party

seeking maintenance to find appropriate employment;
(3) The comparative earning capacity of each spouse;
(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
(6) The duration of the marriage;

Mr. Angel argues that Ms. Angel failed to meet the threshold factors for an award of maintenance under subsection 452.335.1. Mr. Angel does not challenge the amount of the maintenance award, only the granting of maintenance. He contends that the trial court failed to determine Ms. Angel's reasonable needs, and failed to consider that Ms. Angel received sufficient income-producing marital property to exceed the only evidence of her reasonable needs. He further argues that Ms. Angel is capable of supporting herself through employment as a barber or auctioneer.

### 452.335.1(1): Ability to meet reasonable needs through marital property

#### Ms. Angel's reasonable needs

The trial court's judgment did not make a specific finding as to Ms. Angel's reasonable needs. As neither party requested factual findings, the trial court was not required to do so. *Henning v. Henning,* 72 S.W.3d 241, 247 (Mo.App. W.D.2002).

As noted, Ms. Angel submitted a statement of income and expenses into evidence. However, the only evidence in the record before us is Ms. Angel's testimony of expenses. Ms. Angel testified that she had: HOA dues of $32 a month, home maintenance of $100 a month, $300 a month for utilities, automobile expenses of $223, $150 a month for health insurance, $115 for homeowner's/rental insurance, $66.25 a month for auto insurance, and $340 a month for other expenses such as "food, clothing, church contributions, and toiletries." Although the individual insurance items total $331.25, Ms. Angel subsequently stated her "total insurance expense" was $391.25. Mr. Angel argues

Ms. Angel's reasonable needs are $1,386.25.

"Where no specific findings are requested, the appellate court presumes that the trial court resolved all factual issues in accordance with the result reached." *Henning,* 72 S.W.3d at 247; *see* Rule 73.01(c). No testimony was offered that $1,386.25 was the extent of Ms. Angel's needs. "Reasonable needs" are not just the spouse's actual expenses at the time of dissolution; the trial court may take into account the standard of living maintained by the parties during marriage. *In re Marriage of Morris,* 588 S.W.2d 39, 45 (Mo.App. W.D.1979); *In re Marriage of K.B.,* 648 S.W.2d 201, 205 (Mo.App. S.D. 1983) (stating that "[i]n a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs.")

In the instant case, Ms. Angel testified to actual expenses in the months prior to the dissolution; this does not necessarily equate to "reasonable needs." The evidence indicated that Ms. Angel was able to meet these expenses only through an American Express card on which Mr. Angel was making the payments, and then later through cash withdrawals from accounts then held by the parties. Given the amount of marital property and capital amassed through the parties' marriage, the trial court would have been entitled to assess Ms. Angel's reasonable needs at an amount higher than her actual expenses during the pre-dissolution period.

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage[.]

§ 452.335.1.

■ More importantly, the testimony offered in the record on appeal contains omissions. As noted, while Ms. Angel testified that her "total insurance expense" is $391.25, the insurance items cited by Mr. Angel do not total this amount. Further, the testimony failed to account for other obvious expenses such as property taxes. Additionally, the trial court "may allow a reasonable amount above the itemized expenses of the party seeking maintenance to meet unexpected day-to-day expenses which, given their nature, may be reasonable under the circumstances, yet are incapable of specific itemization." *Childers*, 26 S.W.3d at 856. The trial court, in its discretion, could have assessed reasonable needs greater than the relatively modest $1,386.25 per month argued by Mr. Angel. Because the exhibits were omitted, we will presume the income and expense statement contained sufficient evidence to support the trial court's decision. *See Thomas v. Dir. of Revenue*, 874 S.W.2d 427, 429 (Mo.App. W.D.1994).

### *Income from marital property*

Mr. Angel contends that Ms. Angel has sufficient income to meet her reasonable needs through income-producing marital property that was awarded to her. Specifically, Mr. Angel contends the trial court failed to consider (1) interest income from the award of $40,000 from the parties' investment account; (2) interest income from the award of the CD worth $86,000; and (3) rental income from the award of 8709 East 74th Street. He argues the presumed rate of return on the accounts is 5%, which gives Ms. Angel additional income of $525 per month, and the house is capable of producing rental income of $950 per month. These properties, he argues, thus give Ms. Angel an additional income of $1,475.00 per month. We do not agree. While income from the investment account may be imputed, there was insufficient evidence to impute income from the CD or the property at 8709 East 74th Street.

### Interest Income

Section 452.335 requires the trial court to consider whether the party seeking maintenance can meet his reasonable needs through the "marital property apportioned to him." Mr. Angel argues that a presumed 5% of interest on the investment account and the CD should be considered as Ms. Angel's income. Ms. Angel argues that these funds represent her retirement accounts and may not be considered "readily available."

■ A spouse is not required to deplete or use up the marital property she was awarded before being entitled to maintenance. *Hall v. Hall*, 336 S.W.3d 188, 200 (Mo.App. W.D.2011). However, income that may be produced from the awarded marital property must be considered. *Id.* This is because maintenance is not awarded so that the receiving spouse can use it to build an estate or accumulate capital. *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001). Interest income may thus properly be considered. *Henning*, 72 S.W.3d at 249.

■ "As a general principle, income that is not readily available—such as a pension paid only at a fixed, future date—is not counted for maintenance purposes, while readily available income—from cash and cash-like funds—is." *Hill*, 53 S.W.3d at 115.

■ We believe the investment account award is a cash or cash-like fund and interest income may properly be imputed to Ms. Angel for the $40,000 account in order to determine whether she is able to meet her reasonable needs. However, we reject Mr. Angel's contention that the trial court is bound to impute interest at a rate

of 5%; although other cases have done so, this is not a rate that is *per se* required, and in the current economic climate, a 5% rate of return on the type of investments appropriate to a person of Ms. Angel's age and needs appears to be unrealistically high. Even if we accept Mr. Angel's proposed rate of return and use his method of calculation, this would increase Ms. Angel's gross monthly income by $166.67 before taxes, which does not ultimately change the disposition of this case.

In contrast with the investment account, we do not believe that the CD represents a "cash" or "cash-like" fund. No evidence was offered on appeal of the CD's terms or maturation date. No evidence was offered as to whether interest could be withdrawn or if there was a penalty for early withdrawal. Absent this evidence, we cannot consider the CD to be "readily available" and will not impute interest income from the CD as available to Ms. Angel to meet her reasonable needs. In any event, given our conclusions concerning Ms. Angel's reasonable needs, above, and concerning the trial court's refusal to impute rental income below, income from the CD would not be outcome-determinative, even if properly considered.

### Rental income

Mr. Angel further argues that the trial court abused its discretion in awarding maintenance because it failed to account for rental income on 8709 East 74th Street, which was awarded to Ms. Angel out of the marital estate. We do not agree.

On cross-examination, Ms. Angel answered in the affirmative when Mr. Angel asked, "[i]t can be rented out, correct?"

However, she also testified that the parties had not rented the house, that it had no water heater, and there were other things that needed to be done to it, including plumbing. She further testified that she did not know if she would rent it out, that she would probably sell it, because renting was "too hard" in that the property was damaged and she was "not good with making people move out, you know. I feel sorry for them ... it would be very hard for me to do that." Mr. Angel also testified that the house had not been rented and that it was "full of stuff" from auctions. He stated he thought it could be rented for $1,100 and that other houses in area were being rented for $950.

Other than Mr. Angel's testimony, no other proof was offered that the home could be rented, or that it could be rented for that amount. No evidence was offered of the extent of necessary repairs, the cost of putting it into a rentable condition, or the cost of maintaining the property, which would be necessary to determine her net rather than gross income from the property.[5] "An award of maintenance cannot be based on a speculative future condition.... Moreover, speculative future income amounts do not warrant a limitation on maintenance." *Childers*, 26 S.W.3d at 857 (internal citation omitted). Rather, future changes are properly the subject of a motion for modification. While imputing rental income is not totally out of consideration, in these circumstances we do not believe the trial court erred in that there was insufficient evidence to show the extent of repairs needed or the rental value. Consequently, the trial court did not err in failing to impute rental income from the property to Ms. Angel.

---

**5.** We further note that Mr. Angel bases his calculations on gross income that he argues should be imputed to Ms. Angel, while ignoring that expenses are to be paid with after-tax dollars. *See Childers*, 26 S.W.3d at 856–57. "It is proper for the court to consider Wife's expenses in light of her net income after taxes." *Id.* at 857.

### 452.335.1(2): Ability to meet reasonable needs through employment

The trial court found that due to Ms. Angel's "age and circumstances [she] will have a very difficult time earning the amount of income she and [Mr. Angel] earned working together in the auction business." Mr. Angel argues that Ms. Angel could support herself as a barber or as an auctioneer, and that the amount of income earned during marriage has no bearing on whether she could support herself. The trial court may impute income to a party based on the use of best efforts to find employment suitable to her capabilities; we will not reverse the trial court's decision not to do so "absent a manifest abuse of . . . discretion." *Hall*, 336 S.W.3d at 200 (internal quotation marks and citation omitted).

We find no abuse of discretion in the trial court's decision not to impute earned income. The statute directs the trial court to determine the parties' ability to meet reasonable needs through *"appropriate* employment," not *any* employment. § 453.332.1; *see also In re Marriage of K.B.*, 648 S.W.2d at 205 ("the law governing the awarding of maintenance is not so strict as to deny maintenance anytime a spouse may be able to simply 'support himself' "). Ms. Angel did not agree on cross that she could work a minimum wage job to support herself. Ms. Angel was 62 years old at the time of trial, unemployed and drawing social security, and had spent the last 22 years working in the businesses awarded to Mr. Angel. While Mr. Angel argues that Ms. Angel could support herself as a barber, she had last practiced as a barber 22 years prior. *See Hall*, 336 S.W.3d at 199–200.

Nor do we find evidence supporting Mr. Angel's argument that she could meet her reasonable needs running auctions. Mr. Angel was awarded the parties' auction business.[6] At trial, Ms. Angel testified that she did an auction the previous summer and earned $100. She explained that "[i]t takes a long time to get your name out there in the business" and that the auction was a referral to Mr. Angel who was the auctioneer and "the star" of their auction business. Her role was largely helping to set up the auction, serving as cashier or organizing during the auction, and cleaning up after the auction. The only other testimony suggesting Ms. Angel could support herself by running auctions was Mr. Angel's self-serving statements such as "[Ms. Angel] can do anything. She could fly an airplane. She could do anything." And his later statement that "She'll make something work." In fact, Mr. Angel testified that she had overstated her role in the business and had never filled out an auction contract.

Viewing the facts in the light most favorable to the judgment, the trial court's finding was not an abuse of discretion.

### Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

AHUJA, P.J., and WELSH, J. concur.

---

**6.** Testimony at trial tended to support that the determination of no value may have been due to a lack of information provided to the assessor, and that Ms. Angel was unwilling or unable to delay the dissolution after the trial court stated it would deny her request for temporary maintenance.