

# Missouri Court of Appeals

## Southern District

### Division Two

CHARLES HENRY STROH, )
)
    Petitioner-Appellant, )
)
v. ) No. SD33052
)
KELLY ANN STROH, ) **Filed: Dec. 31, 2014**
)
    Respondent-Respondent. )


APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Sidney T. Pearson, Circuit Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS**

Charles Henry Stroh ("Husband") appeals portions of the October 2013 judgment that dissolved his marriage to Kelly Ann Stroh ("Wife"). Husband challenges the trial court's orders concerning maintenance, property division, child support, and attorney fees. Only Husband's claim that the trial court erred as a matter of law in calculating the presumed child support amount has merit. We therefore reverse the judgment as to child support. In all other respects the judgment is affirmed, and the trial court is directed to enter an amended judgment that awards child support in an amount it considers just and appropriate after first calculating the presumed child support amount by using the correct monthly figures for Husband's gross income and the maintenance awarded to Wife.

**Applicable Principles of Review**

"[T]he trial court's decision in a court-tried case is presumed correct, and the appellant has the burden of showing error." *McAllister v. McAllister*, 101 S.W.3d 287, 291 (Mo. App. E.D. 2003). We must affirm the judgment in a dissolution case "if there is substantial evidence to support it, it is not against the weight of the evidence, and it neither erroneously declares nor erroneously applies the law." *In re Marriage of Hillis*, 313 S.W.3d 643, 644 (Mo. banc 2010). We "defer to the factfinder's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences." *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). "A trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Short v. Short*, 356 S.W.3d 235, 240 (Mo. App. E.D. 2011). "When no express finding of fact is made on an issue, we consider the issue to have been resolved in accordance with the result." *In re Marriage of Holden*, 81 S.W.3d 217, 226-27 (Mo. App. S.D. 2002). While the classification of property as either "marital or non-marital is a question of law we review *de novo*[,]" *Short*, 356 S.W.3d at 243, we defer to the trial court's determination of the facts that underlie such a classification. *See Glenn v. Glenn*, 345 S.W.3d 320, 326 (Mo. App. S.D. 2011) (trial court has discretion to determine witness credibility for purposes of classifying property as marital and non-marital).

**Facts and Procedural Background**

The case was tried in a single day in May 2013, and the parties were the only witnesses. Each party also offered numerous exhibits. Based upon the index of exhibits included in the transcript, and references to exhibits made during trial, the admitted exhibits

2

appear to have included bank documents, investment account documents, rental property records, tax returns, life insurance documents, Wife's "Amended Statement of Income and Expenses," Wife's "amended statement of property[,]" and a list of the hours worked by Wife's counsel. Despite the prominent role that some of the admitted exhibits presumably played in influencing the trial court's decisions, Husband has neither deposited nor filed them with this court. "Rule 81.12(e) specifically mandates that '[a]ppellant is responsible for depositing all exhibits that are necessary for the determination of any point relied on.' Where the record on appeal contains evidentiary omissions, we presume they support the trial court's decision." *Angel v. Angel*, 356 S.W.3d 357, 360 n.2 (Mo. App. W.D. 2011).[1]

We now turn to the testimonial evidence as viewed in the light most favorable to the judgment. At the time of trial, Husband was 72 years old, and Wife was 45 years old. The parties began living together in 1989, when Husband was 48 years old and Wife was 20 years old. By sometime in 1991, Wife had divorced her former spouse. Two children were born to Husband and Wife, a daughter in 1996, and a son in 1999. Husband divorced his former spouse in 1998, and the parties eventually married on June 10, 2006.

The parties separated in February 2011, and Husband filed his petition for dissolution three months later. In June 2011, Wife filed a counter-petition that sought, among other things, retroactive maintenance.

Husband had "been buying and selling real estate in St. Louis" for "[o]ver forty years." None of the properties Husband had purchased were encumbered by a mortgage, and Husband received rental income from "a number of" them. Husband and Wife filed

---

[1] Wife's appendix includes five documents purported to be copies of some of her admitted exhibits, in addition to one new item, a proposed Form 14. Items contained in an appendix, but which are not in the legal file or deposited with the appellate court, are not considered on appeal. *U.S. Bank v. Lewis*, 326 S.W.3d 491, 496 (Mo. App. S.D. 2010). Rule references are to Missouri Court Rules (2014); statutory references are to RSMo 2000.

separate tax returns after they married, and Husband acknowledged that his tax returns did not "report everything" he made. Husband admitted that he sometimes kept cash that was paid in rent and did not deposit it into a bank account. Husband also received "close to a thousand" dollars per month from Social Security. Husband received an additional $1,040 per month from Social Security in the form of a benefit for the children.

From 1989 until their separation in 2011, Husband supported Wife financially, and he told her that he would take care of her financial needs. Wife had no post-high school education. Wife did "the majority of the cooking and cleaning and laundry of the house[hold.]" Wife took care of the children after they were born, and Husband told her that he wanted her to stay at home to care for them. It was also difficult for Wife to keep a regular job or attend college because the family went "to Florida three months out of every year right after Christmas[.]" Wife assisted Husband with his real estate business by finding properties to purchase, placing advertisements and listings on properties, taking deeds to the applicable courthouses for filing, moving money between accounts, helping Husband clean properties, doing bookkeeping, and typing various documents.

In 2006 (after the children were both in school), Wife started a silk screening business. That business closed after the parties separated and Husband stopped helping the business financially during slow months. Wife tried to revive the business in 2013, but "[i]t was just too difficult to do on [her] own." She had earned about $1,000 from silk-screening work in 2013 by the time of trial. Wife also started a business that involved selling and delivering trout and produce in St. Louis. Her net income from this business varied from $600 to about $1,000 per month. After looking at the numbers from the year before trial, Wife was not sure that this business could succeed.

4

Wife testified that her monthly living expenses were $5,627, which reflected a lesser lifestyle than she had enjoyed while living with Husband. Wife could not meet her financial needs without assistance, she was behind on some payments, she had relied on "friends and family" for loans, she was receiving "food stamps[,]" and she had sold some vehicles for a total of $5,100 to pay bills after Husband stopped helping her financially. In February 2013, Wife and the children were living in the family home, but Wife could not afford to purchase propane to heat the house. Electric service to the house "was scheduled to be shut off, [and she] was [also] out of firewood." Wife believed that if she left the house, Husband "would have the electric on and the kids would be warm." Wife moved out, and Husband moved back in. The children remained in the home, and Husband made sure that the house was heated.

Husband testified that there were two separate accounts at a single financial institution ("Investment Account 1" and "Investment Account 2," collectively "Investment Accounts") that were in the name of both Husband and Wife as joint tenants with right of survivorship. Husband testified that Exhibit 3 showed a balance in Investment Account 1 of $162,143.36 in "February[.]" He stated that Exhibit 4 showed a balance in Investment Account 2 of $28,987.58, but he did not specify a date for that balance.

A bank account held in the name of a trust created for Husband ("Bank Account 1") held income Husband received "from real estate and [S]ocial [S]ecurity." Another account at a different bank ("Bank Account 2") was in Husband's name, and it included insurance proceeds from a fire at one of the rental properties. We will refer collectively to these two accounts as "Bank Accounts." Wife's name had been on both accounts at one time, and Husband agreed that both had been used to pay marital expenses. Wife acknowledged that

5

she did not directly contribute any money to Bank Accounts. Husband agreed that Exhibit 1 reflected a statement from November 2012 for Bank Account 1, and he stated that Exhibit 2 was his most recent bank statement for Bank Account 2.

Husband obtained two life insurance policies on his life that had accrued cash surrender values ("Life Policies"). One policy was taken out in 1997; the second policy was issued in 1975. Husband also had a life insurance policy on Wife's life, but he had surrendered that policy in 2012 in exchange for $5,500. Husband paid "the premiums for these life insurance policies from the joint account" both "[b]efore and after the marriage[.]" Husband acknowledged that he "suffered from memory loss issues[.]" He also stated, "I'm pretty truthful, but I've been known to lie."

Wife had paid $5,600 toward her legal expenses, and she still owed $32,990 to her attorney through the end of trial. Wife requested a retroactive award of maintenance of $3,000 per month, and she asked that Husband be ordered to pay the remaining balance of her attorney fees.

The dissolution judgment was entered in October 2013. It incorporated, among other exhibits, a "Form 14" ("Exhibit 2"), a spreadsheet entitled "DISTRIBUTION OF MARITAL AND NON-MARITAL PROPERTY" ("Exhibit 3"), and a handwritten list of jewelry ("Exhibit 6"). The trial court found "some portions of" each party's "testimony to not be credible[,]" and it found that "Husband's credibility is particularly in doubt with regard to his testimony concerning property and financial issues."

The trial court found that Husband was able to pay Wife child support in the amount of "$1,197.00 per month for two (2) minor children, and $842.00 per month when there is one (1) minor child remaining," and the judgment ordered Husband to pay these amounts.

Wife was "awarded modifiable maintenance in the amount of $2,500.00 per month[.]"  The judgment ordered Husband to pay Wife retroactive maintenance of $72,500, plus $32,990.80[2] to cover a portion of Wife's attorney fees.  The trial court set aside property it valued at $2,156,725 to Husband as his non-marital property and marital property the trial court valued at $140,292.[3]  The judgment set aside to Wife her non-marital property valued between $14,910 and 33,035[4] and marital property the trial court valued at $398,097; the judgment also ordered Wife to pay $46,500 in marital debt.

The trial court found that the Investment Accounts, Life Policies, and Bank Accounts were all marital property.  The marital property awarded to Wife included "one hundred percent of the [Investment Accounts,]" which were found to total $200,000, and the cash surrender values of Life Policies (valued at $143,430).  The trial court found, based upon Husband's testimony, that Bank Account 1 "had an approximate value of $14,125.00 and that [Bank Account 2] had an approximate value of $77,360.00."  The judgment awarded Bank Accounts to Husband, but it ordered Husband to "pay to Wife the sum of $45,742.00 as and for her one-half of the value of [Bank Accounts]."  Other portions of the judgment will be cited as we analyze Husband's points.

---

[2] In its findings regarding attorney fees, the trial court referred to this amount as having an extra penny, $32,990.81.  *Cf. Foraker v. Foraker*, 133 S.W.3d 84, 94 (Mo. App. W.D. 2004) ("if there are inconsistencies between the findings of fact and the judgment, the judgment prevails over the findings of fact").

[3] All of the real estate (19 parcels with a combined value of $2,145,160) was set aside to Husband as his non-marital property.

[4] The range results from the fact that the judgment awarded Husband and Wife jewelry as their respective non-marital property in its Exhibit 3.  But Wife was also awarded jewelry shown on Exhibit 6 having a different total value as her separate, non-marital property.  We do not need to address the inconsistency between these exhibits as the value of Wife's non-marital jewelry is not addressed in Husband's brief.

**Analysis**

*Point I – Maintenance*

Husband's first point contends: (1) the trial court erred in awarding Wife $2,500 per month in maintenance because there was no evidence that Wife could not support herself by appropriate employment and the "property set aside to" her; and (2) the trial court abused its discretion in awarding Wife maintenance because she "is able to hold gainful employment and received $389,172.00 in cash from [Husband] under the [judgment]."[5]

"Maintenance payments must be limited to the needs of the party requesting support." *Nichols v. Nichols*, 14 S.W.3d 630, 637 (Mo. App. E.D. 2000). "Before maintenance may be awarded, a trial court must find that the spouse seeking such an award (1) lacks sufficient property, including marital property granted to him, to provide for his reasonable needs; and (2) is unable to support himself through appropriate employment." *Creech v. Creech*, 992 S.W.2d 226, 230 (Mo. App. E.D. 1999); *see also* section 452.335.1. Here, the trial court concluded that Wife lacked "sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is not able to support herself through appropriate employment[.]"

Husband's point addresses two statutory factors a trial court must consider when addressing a claim for maintenance: "[t]he financial resources of the party seeking

---

[5] In the argument portion of his brief, Husband also claims the trial court "erred in imputing $11,000.00 per month income to [Husband] for purposes of maintenance[.]" Wife correctly points out that a trial court's imputation of income based on a voluntarily reduction of income is different from finding that a party's income level is actually higher than that party has reported. *Cf. Ricklefs v. Ricklefs*, 39 S.W.3d 865, 874-75 (Mo. App. W.D. 2001) (discussing in the context of child support that "'under reporting income'" is not the same thing "as being" "unemployed or underemployed as a precursor to 'imputing' income"). But we cannot consider the argument for more fundamental reasons. The claim is not asserted in Husband's point, and the judgment does not indicate that the trial court found Husband's income to be $11,000 per month for purposes of calculating maintenance. "Issues that are raised only in the argument part of the brief and are not contained in the point relied on are not preserved for review." *In re Marriage of Fritz*, 243 S.W.3d 484, 488 (Mo. App. E.D. 2007).

8

maintenance"; and the marital and separate property of the parties. Section 452.335.2(1) and (5).[6]

"Although a spouse is not required to deplete or to consume his or her portion of marital assets before being entitled to maintenance[,] interest income from the investment of marital property must be considered in determining the necessity for, and amount of, maintenance." *Pearson v. Pearson*, 22 S.W.3d 734, 737 (Mo. App. W.D. 2000) (citation omitted). "A trial court has broad discretion in determining the amount and duration of a maintenance award in a dissolution case. Maintenance awards are reviewed only for abuse of discretion. Nevertheless, such awards cannot stand without supporting evidence." *Childers v. Childers*, 26 S.W.3d 851, 854 (Mo. App. W.D. 2000) (citations omitted).

The trial court found that Wife's needs for rent, utilities, payments on installment contracts, personal expenses, health insurance, car loan, gas, car maintenance, personal property tax, car insurance, and "personal expenses for the children" (totaling $5,507) were reasonable.[7] The trial court also found it "equitable under the circumstances to award Wife maintenance" in that "Husband solely supported Wife throughout their seven (7) year

---

[6] Husband's argument addresses some other statutory factors: "[t]he time necessary to acquire sufficient education or training" for "appropriate employment[,]" "the comparative earning capacity of each spouse[,]" and "the duration of the marriage[.]" Section 452.335.2(2), (3) and (6). But error concerning specific factors under section 452.335.2 was not alleged in the point relied on beyond Wife's ability to be gainfully employed and make use of the property awarded to her. We therefore limit our analysis to the errors alleged in the point relied on. *Fritz*, 243 S.W.3d at 488.

[7] Although "[i]t is well-settled that expenses attributable to the children are excluded from the calculation of the recipient spouse's reasonable needs for purposes of determining maintenance[,]" *Ferry v. Ferry*, 327 S.W.3d 599, 602 (Mo. App. E.D. 2010), Husband's point does not allege that expenses for "the personal needs of the children" were erroneously included in determining Wife's reasonable needs. Even if Husband had made such a claim, excluding those expenses (leaving a balance of $4,607) would still show that Wife's reasonable expenses exceeded her ability to support herself. Husband does argue that "[t]he [t]rial [c]ourt should have considered the extent to which a provision for support of the minor children living with [Wife] was included in a sum for [Wife] as custodian in determining the appropriate amount of maintenance." This unpreserved argument would also fail. It "is an improper methodology" to consider child support in determining an amount for maintenance. *Childers*, 26 S.W.3d at 857. "The court must first consider whether maintenance will be awarded, and once the court has determined the appropriate amount thereof, then calculate the child support to be awarded." *Id.*

9

marriage and has paid for almost all her living expenses[.]" Wife "lack[ed] a degree beyond high school[,]" she "continues to care for" the children, and her efforts to support herself after the parties separated had "been largely unsuccessful." The judgment recited business income to Wife taken from her tax returns as "$11,922.00 in 2012, $7,265.00 in 2011[,] and $5,007.00 in 2010." The trial court also relied on Wife's testimony "that at times her income has been $1000.00 per month." Based on these findings, the trial court imputed income of $1,274 per month to Wife on its Form 14 child support calculation. *Cf. **Nelson v. Nelson***, 937 S.W.2d 753, 754-55 (Mo. App. S.D. 1997) (holding that a spouse generally has a duty to obtain "full-time employment for purposes of support" and using the income figure used for child support purposes as the basis for analyzing the spouse's earning capacity for maintenance purposes).

We defer to the trial court's credibility determinations, and we view the evidence and the reasonable inferences that may be drawn from it in the manner most favorable to the judgment. ***Mehra***, 819 S.W.2d at 353. In addition to the fact that the trial court was free to decide what testimony to believe, ***Short***, 356 S.W.3d at 240, we also presume that the documentary exhibits Husband failed to provide also supported the trial court's findings regarding Wife's ability to obtain income from employment. *See **Angel***, 356 S.W.3d at 360 n.2.

The absence of these exhibits also affects our ability to review the trial court's determination of what Wife might reasonably have been expected to earn from the property awarded to her. While the trial court did not state a specific value for such potential income, it did explicitly consider such income in deciding that Wife was entitled to an award of maintenance, finding that Wife could not support her reasonable needs with her "property,

*including marital property apportioned to her*," and her income from employment (emphasis added). *Cf.* **In re Marriage of Thompson**, 24 S.W.3d 751, 755 (Mo. App. S.D. 2000) (in which a specific figure for investment income was not required).

Husband's exhibits related to Bank Accounts and Investment Accounts were admitted into evidence. We presume these exhibits would have enabled the trial court to calculate the income Wife could reasonably have expected to earn by investing the proceeds of these accounts, and that such income, when combined with income from employment, would have been insufficient to meet her reasonable needs.

Husband asserts that if a 5% return rate was applied to "a $391,000.00 [sic] investment[,]" then Wife's "necessity for spousal maintenance" would be reduced "to $809.00 per month." Husband argues that "Missouri [courts] consider 5% to be a modest return on investments and where [courts] lack evidence of the rate of return on investments, they frequently assume a 5% rate of return[,]" citing **D.K.H. v. L.R.G.**, 102 S.W.3d 93, 104 (Mo. App. W.D. 2003).

We do not read **D.K.H.** as standing for the proposition that a 5% rate of return is always assumed when there is no evidence of a return rate, nor can we find (due to Husband's failure to provide the exhibits admitted at trial) that the trial court was without evidence of an appropriate rate of return in this case.[8] We will not convict the trial court of

---

[8] In **D.K.H.**, the court actually found that 9.1% could have been used as the rate of return on the wife's "income-generating assets" in denying her maintenance because the wife's own expert used that figure. *Id.* at 103-04. **D.K.H.** distinguished two cases applying a 5% rate of return. *Id.* at 103. *See* **Hosack v. Hosack**, 973 S.W.2d 863, 871 (Mo. App. W.D. 1998) ("assets in the form of CD's" were considered and the court stated that "CD's earn a conservative rate of interest which [the husband] concede[d] could be in the neighborhood of 5%"); and **Nelson**, 937 S.W.2d at 756 ("[a] modest return of 5%" was used to analyze a trial court's denial of maintenance where no evidence of a particular rate of return was noted as being considered by the trial court). *See also* **Myers v. Myers**, 844 S.W.2d 105, 108 (Mo. App. S.D. 1992) (a 5% rate was used in analysis by this court where "an annual return of less than 2 percent" had been assumed by the trial court and the husband's evidence suggested a return rate of 9%). While some decisions from around 1992 to 2002 may have accepted 5% as a moderate rate, "rates of return are not stable[.]" **Breihan v. Breihan**, 73 S.W.2d 771, 778 (Mo. App.

11

error by speculating in the manner Husband now suggests.  *Cf.* ***Adair v. Adair***, 124 S.W.3d 34, 41-42 (Mo. App. W.D. 2004) (finding no plain error in failing to consider evidence about a rate of return not before the trial court).  Father has failed to overcome the presumption that the trial court's judgment regarding maintenance was correct.  Point I is denied.

*Point II – Child Support*

Husband's multifarious Point II[9] asserts the trial court "should have awarded the [S]ocial [S]ecurity benefits [on behalf of the children] to be paid to [Wife]"; "there was no credible evidence . . . that [Husband's] income was $11,000.00 per month as stated on the [trial] court's own Form 14[;] and the [trial] court miscalculated the Form 14" by using $3,000 as the figure for Wife's maintenance.  We will not review Husband's contention that Social Security benefits should have been paid to Wife because his brief does not present any argument supporting the claim.  *See* ***In re Marriage of Michel***, 142 S.W.3d 912, 930 (Mo. App. S.D. 2004) ("errors raised in the points relied on, which are not supported by argument, are deemed abandoned and present nothing for appellate review").  As to the remaining portions of the point, we do find merit in Husband's claim that the trial court erred by using the wrong monthly figures for Husband's gross income and the maintenance awarded to Wife as set forth in its factual findings.

"For meaningful appellate review, the trial court is required to determine and find for the record the presumed correct child support pursuant to Rule 88.01, utilizing [Form 14]."

---

E.D. 2002) (acknowledging 5% as a "recent . . . modest return" but also remanding the case to "recalculate the reasonable expectation of investment income" where remand was also required regarding an "error in imputing employment income").  And, a spouse "should not be required to risk assets in order to generate higher rates of return nor should the court impute a greater amount of income based on more aggressive investments."  ***Id.***

[9] A multifarious point combines more than one allegation of error in a single point in violation of Rule 84.04(d) and it "preserves nothing for appellate review."  ***In re Marriage of Adams***, 414 S.W.3d 29, 33 (Mo. App. S.D. 2013).  Nonetheless, if "the deficiencies do not impede our disposition on the merits" it is within our discretion to review the point *ex gratia*.  ***Id.***  We exercise that discretion here.

*Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). "It is presumed that the amount of child support calculated pursuant to Form 14 and accepted by the trial court is the correct amount to be awarded, subject to being rebutted as being 'unjust and inappropriate.'" *Crews v. Crews*, 949 S.W.2d 659, 669 (Mo. App. W.D. 1997). The trial court may accept one of the parties' Form 14 calculations, or reject both and prepare its own. *McCandless-Glimcher v. Glimcher*, 73 S.W.3d 68, 73 (Mo. App. W.D. 2002).

Here, the trial court rejected "*both* Form 14 calculations submitted by the [p]arties, and substitute[d] its own calculation," which it attached to the judgment as Exhibit 2. (Emphasis added.) As to Husband, the judgment's relevant factual findings included:

> [T]he Court finds that Husband's estimated rental income [is] $9,000.00 per month. Husband also receives approximately $1,000.00 per month in [S]ocial [S]ecurity benefits for himself. Based on the findings set forth in this Judgment, the Court finds that Husband's estimated monthly gross income [is] $10,000.00.

Despite its stated rejection of both parties' Form 14s, the relevant findings concerning Wife included:

> Wife's Form 14 ([Wife's] Exhibit B) includes imputed income to her based on minimum wage of $7.35 per hour for 40 hour[s] per week. The Court finds Wife's proposed Form 14 ([Wife's] Exhibit B) to be reasonable and therefore adopts same. Wife's Form 14 includes maintenance income, as set forth and ordered herein, to Wife from Husband of $2,000.00 per month.

The trial court went on to find, "in accordance with [section] 453.340, and with the calculations set forth in [Wife's Form 14,] that the reasonable amount of child support Husband should pay to Wife is $1,197.00 per month for two (2) children, and $842.00 per month when there is one (1) minor child remaining."

In calculating child support, the trial court did not specifically address the fact that Husband received an additional amount of Social Security on behalf of the children. While

13

it considered Social Security payable on behalf of the children when addressing Husband's sources of income for maintenance purposes, the trial court ultimately found that Husband's income for maintenance purposes was $10,000 per month -- $9,000 from rental income and $1,000 from his own Social Security benefits. The trial court's Form 14, however, stated Husband's monthly gross income to be $11,000 instead of $10,000, and it incorrectly stated that the maintenance paid by Husband to Wife was $3,000, not $2,500. The trial court's Form 14, thus erroneously calculated, produced a presumed child support amount payable by Husband of $1,197 for two children and $842 for one child -- the amounts the judgment ordered Husband to pay.

In reaching its $9,000 in monthly rental income for Husband, the trial court credited Wife's estimate of Husband's rental income as set forth in her "Exhibit U," and it noted that the estimate was also supported by Wife's exhibits V1-V5. The trial court further noted that exhibits related to Bank Accounts 1 and 2 also reflected $4,000 to $21,000 per month in deposits from rental income. Husband admitted that he did not report all of his income on his tax returns and sometimes kept rent paid in cash without depositing it in the bank.

The aforementioned constituted substantial evidence supporting the trial court's finding that Husband's gross income was $10,000 per month. As previously discussed, Husband has also failed to prove that the trial court's maintenance award of $2,500 per month was erroneous. Understandably, Wife readily agrees that the trial court erred in "inaccurately stat[ing] the amount of maintenance paid by [Husband] to [Wife]" on its Form 14 and that this mistake resulted in a "computation error" in the trial court's child support award, arguing that a correction of the maintenance error would actually result in an increase in Father's portion of the presumed child support amount because his relative share of the

14

combined monthly income would thereby increase.  This argument fails to account for the discrepancy between the trial court's finding that Husband's gross income was $10,000 per month and its Form 14 calculation that used a higher monthly gross income amount for Husband of $11,000.

Husband correctly asserts that the figures the trial court used for Husband's gross monthly income and Wife's maintenance in its Form 14 calculation of presumed child support are not supported by substantial evidence.  Because a correctly calculated Form 14 is presumed to be the appropriate amount of child support, Husband has demonstrated that the error was prejudicial.  *Cf. Nelson v. Nelson*, 195 S.W.3d 502, 510 & 512 (Mo. App. W.D. 2006) (the presumed child support amount "must be awarded" unless it is found by the court to be "unjust or inappropriate[,]" but trial court's Form 14 was incorrect and child support award must be reversed); *see also* Rule 84.13(b).  The portion of Husband's second point that challenges the trial court's award of child support is granted.

*Point III – Investment Accounts, Life Policies, and Bank Accounts*

Husband's third point claims the trial court erred in awarding Wife the Investment Accounts, Life Policies, and one-half of Bank Accounts (collectively "these assets") because they were his separate property pursuant to section 452.330 in that they were obtained before the marriage and were funded exclusively by Husband.  Husband argues that because the Investments Accounts "at the time of the marriage had approximately $191,131.00 of value . . . , the only real contribution that the Court could consider as marital, is any amounts [sic] above $191,131.00."[10]  Husband argues that because Wife contributed "no marital

---

[10] The figure identified by Husband in his brief as the balance of the Investment Accounts "at the time of the marriage" -- $191,131 -- was not the balance shown in June 2006; it was actually the combined balance of Investment Account 1 (as of a February 2012 statement) and Investment Account 2 (from a date not revealed in the record on appeal).

15

assets" to the Life Policies, they "should be set aside to him in [their] totality[;]" and as Wife contributed "nothing" to Bank Accounts, she is "entitled to nothing" from them. We disagree.

"Although the division of marital assets and debts need not be equal, it must be just and equitable." *Nichols*, 14 S.W.3d at 635 (footnote omitted). "The division of marital property is left to the sound discretion of the trial court, and its decision will be upheld unless an abuse of discretion is shown." *Noland-Vance v. Vance*, 321 S.W.3d 398, 423 (Mo. App. S.D. 2010). "We presume that the trial court's division of property is correct, and the party opposing the division bears the burden of overcoming this presumption." *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo. App. W.D. 2000).

> Marital property is
>
> all property acquired by either spouse subsequent to the marriage except:
>
> (1) Property acquired by gift, bequest, devise, or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (3) Property acquired by a spouse after a decree of legal separation;
>
> (4) Property excluded by valid written agreement of the parties; and
>
> (5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

Section 452.330.2.

"Property is non-marital if one spouse owned it before the marriage and retained separate title to it after marriage." *Jinks v. Jinks*, 120 S.W.3d 301, 305 (Mo. App. W.D. 2003). "Placing separate property of a spouse into the joint names of both spouses creates a

16

rebuttable presumption that the property has been transmuted into marital property." *Id.*

"All property acquired by either spouse subsequent to the marriage . . . is presumed to be

marital property regardless of whether title is held individually or by the spouses in some

form of co-ownership[.]" Section 452.330.3.[11] Finally, "[a]ny increase in the value of

separate property is marital property if marital assets or marital labor contributed to

acquiring that increase." *Selby v. Selby*, 149 S.W.3d 472, 484 (Mo. App. W.D. 2004).

"The burden is on the party who claims that the property is separate to overcome the

presumption of marital property and show that it falls into one of the exceptions listed in

Section 452.330.2." *Shaw v. Shaw*, 413 S.W.3d 332, 337 (Mo. App. W.D. 2013). "Error in

classifying property is not necessarily prejudicial unless it materially affects the merits of the

action." *Jinks*, 120 S.W.3d at 306. "The mere erroneous classification of property, where

the decree is nonetheless fair, will not require a reversal." *Id.* Absent a contention in the

point relied on that the erroneous classification resulted in an unfair overall division of

property, the claim has been abandoned and reversal is not required. *Burk v. Burk*, 936

S.W.2d 144, 145-46 (Mo. App. S.D. 1996) (husband was correct that a tract of land should

have been classified as marital, but reversal was not ordered because he did not contend that

the resulting division of property was unfair); *see also Glenn*, 345 S.W.3d at 327 (trial court

misapplied the law in finding that no marital contributions had been made toward an

acreage, but reversal was not required where wife did not allege that the property division

was unfair, establish what percentage of the acreage was marital, nor show how the

erroneous classification impacted the overall division of property).

---

[11] Such a presumption may be overcome when the property is shown to be an exception to marital property listed in section 452.330.2. Section 452.330.3.

This last principle is fatal to Husband's claim. Even if we assume, *arguendo*, that the trial court erred in classifying any or all of these assets as marital property, Husband's point does not contend that the misclassification resulted in an overall division of marital property that was inequitable. Point III is denied.

*Point IV – Attorney Fees*

Husband's final point claims the trial court erred by ordering Husband to pay a portion of Wife's attorney fees because it "failed to consider" that Wife was awarded $389,172 in "cash[,]" which could have been used to pay her attorney fees, and "it is presumed that parties to litigation will pay their own attorney fees[.]"[12]

The trial court correctly noted that it is permissible under section 452.355.1 to require one party to pay the other's attorney fees in a dissolution action. It further found "credible" Wife's "evidence and testimony of her inability to pay her attorneys, her limited access to funds to pay her attorneys due to Husband's control of the parties' financial resources, and Husband's behavior during the litigation." The trial court concluded "that unusual circumstances exist to support deviation from the normal rule that each party bear his own litigation costs[.]"

Husband argues that "[a] deviation from the general rule requiring each party to pay his or her own cost by requiring one party to pay the other party's attorney fees is not justified absent a showing of very unusual circumstances[,]" citing ***Campbell v Campbell***, 825 S.W.2d 319, 323 (Mo. App. W.D. 1992). In making this argument, Husband failed to note that the western district of this court later "expressly rejected the 'very unusual circumstances' standard in domestic relations cases brought under Chapter 452." ***Mobley v.***

---

[12] The argument that follows this point also contends that the award of attorney fees was "against the weight of the evidence[.]" Because this claim is not contained in the point relied on, we disregard it. *Fritz*, 243 S.W.3d at 488.

18

*Phillips*, 942 S.W.2d 399, 403 (Mo. App. W.D. 1997). Moreover, our own district has pointed out that "[t]he relevant statute [section 452.355.1] contains no requirement of unusual circumstances." *Dimmitt v. Dimmitt*, 849 S.W.2d 218, 222 (Mo. App. S.D. 1993).

Under section 452.355.1, an award of the costs of the proceeding, including attorney fees, may be made "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]" *See also Russell v. Russell*, 210 S.W.3d 191, 199 (Mo. banc 2007). "Financial inability of the spouse to pay attorney's fees is not a requirement for awarding attorney's fees." *Id.* "[T]he fact that a spouse has the means to pay his or her attorney's fees does not preclude an award for payment of the same." *Cohen v. Cohen*, 73 S.W.3d 39, 56 (Mo. App. W.D. 2002). "[O]ne party's greater ability to pay is sufficient to support an award of attorney's fees." *Russell*, 210 S.W.3d at 199.

> The trial court is afforded broad discretion in its award of attorney fees, and its award is presumed to be correct. *Bell v. Bell*, 360 S.W.3d 270, 284 (Mo. App. 2011). This Court will reverse such an award only when a party demonstrates that the trial court abused its discretion. *Id.* To demonstrate such an abuse, the complaining party must show that the award was against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice.

*In re Marriage of Geske*, 421 S.W.3d 490, 496-97 (Mo. App. S.D. 2013). "An award of attorney fees to a party is not an abuse of discretion merely because that party receives the benefit of a more-than-equal share in the division of property." *Adair*, 124 S.W.3d at 40-41.

Here, although it was not required to do so, the trial court expressly found that Wife was unable to pay her remaining attorney fees, and it also considered Husband's actions during the pendency of the litigation. From the evidence already discussed, and the presumption that the omitted trial exhibits would have further supported the trial court's

19

award, *see Angel*, 356 S.W.3d at 360 n.2, we cannot find that the trial court abused its discretion in awarding $32,990.80 in attorney fees to Wife. Point IV is denied.

## Decision

The award of child support in the judgment is reversed. In all other respects, the judgment is affirmed. The matter is remanded to the trial court, which is directed to enter an amended judgment that awards child support in an amount it considers just and appropriate after first calculating the presumed child support amount using the correct maintenance and income figures.

DON E. BURRELL, J. - OPINION AUTHOR

MARY W. SHEFFIELD, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS